UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARED DAVIS,<br><br>             Plaintiff,<br><br>     v.<br><br>K. ALLISON; R. GODWIN; O. ONYEJE, et al.,<br><br>             Defendant. | Case No.  1:21-cv-00494-HBK<br><br>FINDINGS AND RECOMENDATIONS TO DENY PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER[1]<br><br>(Doc. No.  3)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Plaintiff Jared Davis initiated this action as a state prisoner proceeding *pro se* by filing a civil rights complaint under 42 U.S.C. § 1983 on March 24, 2021.  (Doc. No. 1, "Complaint"). Plaintiff concurrently moved for a for temporary restraining order seeking relief from Pleasant Valley State Prison's Covid-19 practices and policies.[2]  (Doc. No. 2, "Motion").  The Motion included Plaintiff's declaration in support. On May 19, 2021, the Court directed the Warden at Pleasant Valley State Prison to respond to Plaintiff's motion.  (Doc. No. 8).  On June 2, 2021, the Warden entered a special appearance and filed a response opposing Plaintiff's Motion, attaching

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Eastern District Local Rule 302 (E.D. Cal. 2019).

[2] Although Plaintiff filed a motion for temporary restraining order, Defendant received notice and responded.  Thus, the instant motion is properly treated as a motion for preliminary injunction, although the standard for either is basically the same. *See Infra* at 4-6 (reviewing standard for temporary restraining orders and preliminary injunctions).

supporting exhibits. (Doc. No. 8). Plaintiff filed a Reply, attaching declarations from other inmates. (Doc. No. 12). The undersigned has carefully reviewed the pleadings and other submissions and, as more fully set forth below, recommends that the district court deny Plaintiff's Motion.

**I. BACKGROUND & FACTS**

Both Plaintiff's Complaint and the Motion allege violations of his right to be free from cruel and unusual conditions of confinement. Specifically, Plaintiff alleges that the Covid-19 protocols at Pleasant Valley State Prison ("Pleasant Valley") are contributing to the spread of the Covid-19 virus, primarily through the denial of adequate supplies to clean the facility and by housing inmates with potentially infected inmates, all under the threat of disciplinary sanctions for non-compliance. (Doc. No. 1 at 3, Doc. No. 3 at 1). On July 6, 2021, Plaintiff filed a First Amended Complaint maintaining an Eighth Amendment violation and adding a Fourteenth Amendment violation.[3] (*See* Doc. No. 11 at 2).

Specifically, Plaintiff alleges correctional officials are not re-testing Covid-19 positive inmates before they are re-housing them with healthy inmates following quarantine. (Doc. No. 3 at 2). Plaintiff alleges he caught the virus after being housed with an inmate who was not re-tested before being released from quarantine. (*Id.*). Plaintiff acknowledges that as of the filing of the Complaint and his Amended Complaint, he has not completed the administrative grievance process available to him at the correctional institution. (Doc. No. 1 at 2; Doc. No. 11 at 8).

The Warden opposes Plaintiff's Motion, attaching the following exhibits in support: Declaration of M. Harris, Correctional Captain at Pleasant Valley (Doc. No. 9 at 11-14), with attachments consisting of an April 8, 2020 Memorandum detailing Covid-19 related cleaning protocols for institutions, "Protocol: Clean and Disinfect for emerging pathogen Covid-19"; a March 25, 2020 Memorandum to California Prison Industry Authority regarding disinfectants (*id.* at 15-22); Declaration of A. Scheesley, Supervising Registered Nurse at Pleasant Valley (*id.* at 23-24); copies of advisory statements published online from the Center for Disease Control (*id.* at

---

[3] Plaintiff also references violations of state law citing to the California Constitution, Article I, Sections 24 and 26, and Sections 7 and 17. (Doc. No. 11 at 2-3).

27-40); April 10, 2020 Memorandum from J. Clark Kelso to Secretary Ralph Diaz (*id.* at 41-42); "Covid-19 and Seasonal Influenza: Interim Guidance for Health Care and Public Health Providers" Control Strategies for Suspected and Confirmed Cases, Figure 12.1: Algorithm for Release from Isolation Criteria for Patients with Covid-19 (*id.* at 44); and an April 17, 2020 order denying prisoner-plaintiffs' motion for a preliminary injunction issued in *Plata v. Newsom* by the Hon. Jon S. Tigar, United States District Judge (*id.* at 46-64).

The Warden initially provided documents showing that Pleasant Valley *is* providing M-95 masks for inmates upon request, correctional staff are required to wear approved-facial coverings, inmates are tested on a weekly basis for Covid-19, inmates involved with meal serving are removed immediately from the job if they test positive, inmates who test positive are placed in isolated housing for fourteen days, are medically monitored and must be cleared by medical personnel prior to returning to their assigned housing, and that re-testing for Covid-19 prior to rehousing is not required by the Center for Disease Control guidelines. (Doc. No. 9 at 1-2) (emphasis added).

Addressing the elements necessary for a preliminary injunction or a temporary restraining order, the Warden first argues Plaintiff is unlikely to succeed on the merits because Defendants are not acting with deliberate indifference to his health or safety. (Doc. No. 9 at 3-6). The Warden also argues that Plaintiff failed to demonstrate that he is likely to suffer irreparable harm and notes Plaintiff has had the Covid-19 vaccine. (*Id.* at 6). Significantly, the Warden points out that the issues Plaintiff raises in the instant case are duplicative of efforts in ongoing class actions, citing *Plata*[4] and *Coleman*.[5] (*Id.* at 8-9). Finally, the Warden argues that Plaintiff lacks standing to raise claims on behalf of other inmates, that the Court should exercise deference in favor of prison officials and that issuing an injunction would not comply with the Prison Litigation Reform Act. (*Id.* at 6-9).

In Reply, Plaintiff clarifies he is not pursuing this cause of action on behalf of any other

---

[4] *Plata v. Newsom*, Case No. 4:01-cv-0351-JST, Doc. No. 3291 (N.D. Cal. April 17, 2020).
[5] *Coleman v. Newsom*, ____ F.Supp.3d _____, 2020 WL 1675775 at *1 (E.D. Cal/N.D. Cal. April 4, 2020).

inmates but was merely trying to relay the severity of the conditions based on the number of people impacted. (Doc. No. 12 at 10). Plaintiff concedes that since he filed the Motion, the circumstances within the correctional institution "have somewhat evolved" for the better. (*Id.* at 2). Plaintiff admits that masks and other personal protective equipment are available to inmates. (*Id.* at 3, 7, 10). Since filing the Motion, Plaintiff also recognizes that he has received the Covid-19 vaccine but notes that the vaccine is not effective against new virus strains, such as the delta-variant. (*Id.* at 3). Plaintiff summarizes that his primary concern is the lack of adequate cleaning supplies available at the correctional institution. (*Id.* at 10). He further argues the quarantine period should be 14 days, not the current 10 days. (*Id.* at 4). As supporting evidence, Plaintiff attaches declarations from three inmates, each of whom describe contracting the Covid-19 virus in December 2020 after being housed with inmates emerging from quarantine, as well as address the limited availability of cleaning supplies for inmates to clean their respective cells. (*Id.* at 12-24).

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a). Eastern District of California Local Rule 231, however, requires notice for temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and the court considers whether the applicant could have sought relief by motion for preliminary injunction at an earlier date. Local Rule 231(a)-(b) (E.D. Cal. 2019). A temporary restraining order "should be restricted to serving [its] underlying purpose of

preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A temporary restraining order is "an extraordinary remedy" and may be issued only if Plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A TRO will not issue if Plaintiff merely shows irreparable harm is possible – a showing of likelihood is required. *Id.* at 1131.

The injunctive relief an applicant requests must relate to the claims brought in the complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a Plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."). Absent a nexus between the injury claimed in the motion and the underlying complaint, the court lacks the authority to grant Plaintiff any relief. *Id.* at 636.

The Prison Litigation Reform Act ("PLRA") imposes additional requirements on prisoner litigants seeking preliminary injunctive relief against prison officials. In such cases, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *Villery v. California Dep't of Corr.*, 2016 WL 70326, at *3 (E.D. Cal. Jan. 6, 2016). As the Ninth Circuit has observed, the PLRA places significant limits upon a court's power to grant preliminary injunctive relief to inmates, and "operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of California*, 220 F.3d 987, 998-99 (9th Cir. 2000). The court's jurisdiction is "limited to the parties in this action" and the pendency of an action "does not give the Court jurisdiction

over prison officials in general or over the conditions of an inmate's confinement unrelated to the claims before it." *Beaton v. Miller*, 2020 WL 5847014, at *1 (E.D. Cal. Oct. 1, 2020). If a prisoner has been transferred, any sought injunctive relief against the previous facility becomes moot if the prisoner "has demonstrated no reasonable expectation of returning to [the prison]." *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Florence v. Kernan*, 813 F. App'x 325, 326 (9th Cir. 2020). Finally, state governments have "traditionally been granted the widest latitude in the dispatch of [their] own internal affairs." *Rizzo v. Goode*, 423, U.S. 362, 378 (1976) (citations omitted). This deference applies even more strongly when the court is asked to involve itself in the administrative decisions of a prison. *See Turner v. Safely*, 482 U.S. 78, 85 (1987); *Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

### III. DISCUSSION

Having reviewed Plaintiff's Motion, the Response, the Reply, and the supporting exhibits attached, the undersigned does not find Plaintiff has satisfied his burden to warrant issuance of this extraordinary remedy. Plaintiff does not demonstrate a likelihood of success on the merits or show that immediate irreparable injury, loss, or damage will result absent court intervention. Plaintiff's allegations do not satisfy the four elements necessary for issuance of a preliminary injunction.

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, interpreted as the "unnecessary and wanton infliction of pain" that is "grossly disproportionate to the severity of the crime" and "totally without penological justification." U.S. Const. Amend. VIII; *see also Rhodes v. Chapman*, 452 U.S 337, 345-46 (1981) (internal citations omitted); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment standard "draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society" because "no static 'test' can exist." *Rhodes*, 452 U.S. at 346 (citations omitted).

Not every injury a prisoner sustains while in prison represents a constitutional violation. A plaintiff pursuing an Eighth Amendment conditions of confinement claim must establish both an "objective component" and a "subjective component." *Farmer*, 511 U.S. at 834. The objective component relates to the seriousness of the challenged conditions. *Id.* While the

6

1   subjective component speaks to the state of mind of the officials responsible for the alleged
2   violation. *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (rejecting a reading that the
3   Eighth Amendment would allow liability to be imposed on prison officials solely because of the
4   presence of objectively inhumane prison conditions).  A correctional official must have acted
5   with deliberate indifference to the inmate's safety in allowing the deprivation to take place.
6   *Farmer*, 511 U.S. at 834.  Deliberate indifference is equivalent to "subjective recklessness" as it
7   is used in criminal law, "when a person disregards a risk of harm of which he is aware." *Id.* at
8   836-837.  A prisoner who challenges his living conditions as violating the Eight Amendment,
9   must demonstrate unquestioned and serious deprivations of basic human needs" or of the
10  "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. at 347, *accord*,
11  *Wilson v. Seiter*, 501 U.S. at 308.  The Supreme Court has determined basic human needs include
12  "food, clothing, shelter, medical care and reasonable safety" as well as "warmth [and] exercise."
13  *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Wilson*, 501 at 304.

14  Generally, the issue in this case boils down to whether three Covid-19 protocols in place
15  at Pleasant Valley subject Plaintiff to unconstitutional conditions of confinement under the Eighth
16  Amendment: (1) requiring only a 10-day quarantine period rather than 14 days; (2) not testing
17  Covid-19 positive inmates before releasing them from quarantine to a cell with a presumably
18  healthy inmate; and (3) not providing all inmates unfettered access to adequate cleaning supplies
19  for the inmates' cells.  The undersigned concludes none of the challenged protocols standing
20  alone, nor collectively, constitute unconstitutional conditions of confinement.

21  This Court need not reiterate the history, transmission, or impact of Covid-19.  Suffice it
22  to say, since early 2020, the world has been learning about and adapting to the Covid-19 virus,
23  which has perpetuated a global pandemic.  Individuals with underlying health conditions—such
24  as heart, lung, or liver disease, diabetes, or advanced age—are thought to be at greater risk if
25  exposed to the virus.  But, as research continues and knowledge expands, the standards for how to
26  address Covid-19 are fluctuating.  The Eighth Amendment analysis is governed by the "evolving
27  standards of decency that mark the progress of an evolving society."

28  Assuming *arguendo* that the conditions surrounding the Covid-19 pandemic in

correctional institutions satisfy the "objectively serious" prong, Plaintiff has not alleged sufficient facts to satisfy the "subjective" prong of the Eighth Amendment. Plaintiff's claims of threatened harm are speculative at best. Plaintiff acknowledges that he chose to have the Covid-19 vaccine. (Doc. No. 12 at 2). Additionally, Defendants produce numerous supporting exhibits detailing the protocols the California Department of Corrections and Rehabilitation and officials at Pleasant Valley are following in effort to keep inmates healthy. Notably, Pleasant Valley refers the Court to its implementation of various protocols consistent with the Centers for Disease Control and Prevention, an arm of the Department of Health and Human Services ("CDC") guidelines,[6] including but not limited to:

- Recognizing "social-distanced cohort" for purposes of double-cell housing in correctional institutions. (Doc. No. 9 at 26).
- Requiring that masks are worn by inmate workers and correctional staff members, with the exception for mask when the staff member is alone in a hard-walled office, tower, or control booth, or when the staff is actively responding to an incident but requires putting on the facial covering upon arrival at the incident. (*Id.* at 11-2, ¶¶ 3, 4, 5).
- Making available PPE in the form of M-95 masks, KN95 masks, and surgical style masks to inmates upon request. (*Id.* at ¶ 6).
- Providing upon request, cleaning chemicals and supplies to inmates. (*Id.* at ¶7).
- Testing inmates weekly for Covid-19, except those who are housed in isolation for

---

[6] Nothing in these Findings & Recommendation shall be construed that the undersigned finds the CDC's guidelines have the force of law or are anything more than "guidelines." Because the issue is not before this Court, the undersigned does not analyze whether the CDC's guidelines are properly imposed, or whether the guidelines exceed the CDC's authority under the Administrative Procedures Act. Although other federal courts have found the CDC has exceeded its authority in promulgating certain rules not related to correctional institutions. *See Terkel v. Centers for Disease Control and Prevention*, F.Supp.3d ___, 2021 WL 742877 (E.D. Texas Feb. 25, 2021) (noting "[t]he federal government cannot say that it has ever before invoked its power over interstate commerce to impose residential eviction moratorium. It did not do so during the deadly Spanish flu pandemic…. Nor did it invoke such power during the exigencies of the Great Depression. The federal government has not claimed such great power at any point during our Nation's history until last year."); *see also State v. Becerra*, ___ F.Supp.3d ___, 2021 WL 2514138 (M.D. Fla. June 8, 2021) (granting Florida's preliminary injunction to enjoin CDC's "conditional sailing" order finding CDC exceeded its authority when it issued rules governing Florida's cruise industry).

a positive Covid-19 test. (*Id.* at ¶9). Correctional officials receive the Covid-19 test results within forty-eight hours. (*Id.* at ¶10).

- Immediately re-housing an inmate who receives a positive test in the designated housing unit *for up to 14 days*. (*Id.* at ¶11) (emphasis added)). An inmate may be kept longer than 14 days in quarantine if the inmate still exhibits the Covid-19 symptoms passed the 14 days. (*Id.*)

- Monitoring inmates once in quarantine with body temperature and oxygen-level checks. (*Id.*).

- Requiring a health care provider to "clear" an inmate before releasing the inmate from isolation. (*Id.*).

- Permitting an inmate who no longer shows Covid-19 symptoms to be released from quarantine earlier than 14-days. (*Id.* at 24.)

Other federal courts have found similar measures by correctional officials in comparable circumstances to be reasonable and not violative of the Eighth Amendment. *See Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) (finding measures implemented by the federal bureau of prisons to reduce the spread of Covid-19 virus reasonable and not in violation of the Eighth Amendment); *see also Easley v. Wetzel*, 2021 WL 1200214 *1 (W.D. Pa. Feb. 26, 2021) (citing *Massey v. Wetzel*, 2020 WL 5526688 *1 (W.D. Pa. Sept. 15, 2020)).

Here, Plaintiff contends Pleasant Valley is violating his protected Eighth Amendment rights by not keeping Covid-19 positive inmates in quarantine for the full 14-days and by not re-testing an inmate before release from quarantine. Defendant does not dispute these facts, acknowledging that the inmates may be released from quarantine earlier than 14-days but only if the inmate no longer has any symptoms and are "cleared" by medical, not necessarily entailing another Covid-19 test. The only disputed fact on this record concerns the inmates' respective access to cleaning supplies for their respective cells. Plaintiff submits that all inmates do not have access to adequate cleaning supplies for their cells. (*See* Doc. No. 12 at 5; 19, ¶22) (noting only inmates designated as "porters" have access to the cleaning supplies). Defendant, however, submits all inmates have access to cleaning supplies upon request. (Doc. No. 9 at ¶7). Plaintiff

9

acknowledges he has received the vaccine as requested. The protocols challenged by Plaintiff fall far short of denying him his basic human needs. *See Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Wilson*, 501 at 304.

Further, the United States Supreme Court has cautioned the lower courts about micromanagement of correctional institutions, noting that the federal courts "ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *See Sandin v. Conner*, 515 U.S. 472, 483 (1985) (citations omitted). "Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims." *Id.* (citations omitted). This does not mean correctional authorities can do and act as they please with inmates. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974). Rather, correctional officials' decisions must be logically related to institutional safety or correctional goals. *See generally Ponte v. Real*, 471 U.S. 491, 497 (1985) (discussing whether inmates in disciplinary hearings have unfettered right to all witnesses at disciplinary hearings).

The undersigned recommends the federal court should not involve itself in the micromanagement of correctional institutions to the degree requested by Plaintiff by dictating the number of days required to quarantine an inmate or directing that all inmates have unfettered access to cleaning supplies. The record evidence demonstrates that quarantine is happening for Covid-19 positive inmates and inmates *do* have access to cleaning supplies, among other measures. (*See* Doc. No. 9 at 19, ¶ 27) (noting inmates often use dish soap liquid from the canteen or any other supplies for their cells). Nor does Plaintiff allege that he asked for cleaning supplies for his cell and was denied any supplies. (*See generally* Doc. No. 12). In fact, an inmate-witness declaration attached to Plaintiff's reply states he has "yet to see an inmate ***ask*** to use a cleaning bucket or be provided any of the chemicals used to clean the housing unit." (*Id.* at 19, ¶24) (emphasis added). This follows the adage, ask and it will be given to you, or you do not receive because you do not ask.

Further, as acknowledged in both the complaint and amended complaint, Plaintiff has not exhausted his administrative remedies before initiating the instant action. Thus, even if Plaintiff

asked for cleaning supplies for his cell and correctional officials denied the request, he admits he has not taken the affirmative steps to bring the issue to correctional officials through the administrative grievance procedure to permit them an opportunity to rectify the issue. *See* 42 U.S.C. § 1997e(a) ("[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 or any other federal law by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."); *see also Jones v. Bock*, 549 U.S. 199 (2007)(finding exhaustion of administrative remedies is an affirmative defense defendants raise and steps taken to exhaust are governed by the particular correctional institution's rules); *Booth v. Churner*, 532 U.S. 731 (2001)(maintaining a prisoner must exhaust administrative remedies before filing suit with a focus on the administrative remedies as "are available").

Based on a review of the pleadings and submissions, the undersigned finds Plaintiff does not demonstrate a substantial likelihood of success on the merits, which is fatal to a motion seeking a temporary restraining order or a preliminary injunction. Nor does Plaintiff demonstrate likelihood of irreparable harm in the absence of preliminary relief. Thus, the undersigned recommends that the district court deny Plaintiff's motion for temporary restraining order.

Accordingly, it is **ORDERED:**

The Clerk of Court shall assign this case to a district judge.

It is further **RECOMMENDED**:

Plaintiff's motion for a temporary restraining order (Doc. No. 2) be DENIED.

NOTICE TO PARTIES

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   August 24, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE