1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JARED DAVIS,                          Case No.  1:21-cv-00494-JLT-HBK (PC)

12              Plaintiff,                  FINDINGS AND RECOMMENDATIONS TO
                                            DISMISS CASE[1]
13        v.
                                            FOURTEEN-DAY OBJECTION PERIOD
14   K. ALLISON, et al.,
                                            (Doc. No.  21)
15              Defendants.

16

17        Pending before the Court for screening under 28 U.S.C. § 1915A is Plaintiff's Second

18   Amended Complaint.  (Doc. No. 21, "SAC").  For the reasons set forth below, the undersigned

19   recommends that the district court dismiss the Second Amended Complaint because it fails to

20   state any cognizable constitutional claim.

21                              **SCREENING REQUIREMENT**

22        Plaintiff commenced this action while in prison and is subject to the Prison Litigation

23   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen any complaint that seeks

24   relief against a governmental entity, its officers, or its employees before directing service upon

25   any defendant. 28 U.S.C. § 1915A.  This requires the Court to identify any cognizable claims and

26   dismiss the complaint, or any portion, if is frivolous or malicious, that fails to state a claim upon

27   _____

28   [1]This matter was referred to the undersigned pursuant to 28 U.S.C. §636(b)(1)(B) and Eastern District of
     California Local Rule 302 (E.D. Cal. 2022).

which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

At the screening stage, the Court accepts the factual allegations in the complaint as true, construes the complaint liberally, and resolves all doubts in the Plaintiff's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

The Federal Rules of Civil Procedure require only that the complaint include "a short and plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient factual detail to allow the court to reasonably infer that each named defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

If an otherwise deficient pleading could be cured by the allegation of other facts, the *pro se* litigant is entitled to an opportunity to amend their complaint before dismissal of the action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).  However, it is not the role of the Court to advise a *pro se* litigant on how to cure the defects.  Such advice "would undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13.

1

**BACKGROUND AND SUMMARY OF OPERATIVE PLEADING**

2          Plaintiff, a state prisoner proceeding pro se, initiated this action by filing a civil rights

3   complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  Before the initial complaint was screened,

4   Plaintiff filed a first amended complaint.  (Doc. No. 11, "FAC").  The FAC alleged that the

5   Secretary of CDCR, the Warden of Pleasant Valley State Prison ("PVSP"), and the Chief Medical

6   Officer of PVSP failed to prevent a COVID outbreak from occurring at PVSP, which ultimately

7   infected Plaintiff and caused him to lose his sense of taste.  (*Id*. at 4).   The undersigned screened

8   Plaintiff's FAC and found it failed to state any cognizable claim.  (Doc. No. 20 at 1).

9          Plaintiff timely filed a Second Amended Complaint ("SAC").  (Doc. No. 21.)  He attaches

10   to the SAC the declarations of fellow inmates Billy Keck, Thomas Wanamaker, and Jonathan

11   Kohut.  (Doc. No. 21 at 6-17).[2]  The incidents giving rise to the SAC occurred at PVSP.  (*Id*. at 3-

12   4).  The SAC names as Defendants (1) Kathleen Allison, the Secretary of CDCR, (2) R. Godwin,

13   the Warden of PVSP, and (3) O. Onyeje, the Chief Medical Examiner of PVSP.  (*Id*. at 2-3).  The

14   following facts are presumed true at this stage of the proceedings.

15          During December 2020, PVSP experienced a "severe outbreak" of COVID-19.  (*Id*. at 3).

16   Prison staff, "with the OK" from Defendants Allison and Godwin, and medical clearance from

17   Defendant Onyeje, moved infected people from multiple yards to Plaintiff's yard (D-Yard) to be

18   quarantined.  (*Id*. at 3-4).  While inmates were being moved around, prison staff "did not use or

19   give proper PPE or cleaning supplys [sic]."  (*Id*. at 4).  Around December 19, 2020, Plaintiff was

20   housed in a single cell and had recently tested negative for COVID-19 multiple times.  (*Id*. at 4).

21   Against his wishes, another inmate, Billy Keck, was moved into Plaintiff's cell.  (*Id*.)  Keck had

22

23   _____

[2] The Court's review is limited to the complaint, exhibits attached, and materials incorporated into the
24   complaint by reference, and matters of which the court may take judicial notice.  *Petrie v. Elec. Game
Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014); *see also* Fed. R. Civ. P. 10(c).  Because the exhibits are
25   attached and incorporated in the Complaint, the Court may consider the exhibits when their authenticity is
not questioned.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (noting at 12(b)(6) stage
26   material properly submitted as part of the complaint may be considered without converting the motion to
dismiss to a motion for summary judgment).  While the Court accepts the factual allegations in the
27   Complaint as true, it need not accept as true allegations that contradict matters properly subject to judicial
notice or by exhibit.  *See Mullis v. United States Bankr.Ct.,* 828 F.2d 1385, 1388 (9th Cir.1987); *Sprewell
v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d
28   1187 (9th Cir. 2001).

completed only 11 days of a required 14-day quarantine and according to Plaintiff was sick at the time.  (*Id*.).  That night, Plaintiff states he "felt corona virus consume me and a day or so later I tested positive."  (*Id*. at 4).  Plaintiff lost his senses of taste and smell and has yet to recover them.  (*Id*. at 4).  Plaintiff asserts that "K. Allison controls R. Godwin.  R. Godwin controls and approves everything at pleasant valley state prison.  O. Onyeje controls medical at pleasant valley state prison."  (*Id*.)  Therefore, Plaintiff contends, Defendants are responsible for his infection and subsequent harm.  (*See id*.).

Plaintiff asserts claims under the 8th and 14th Amendments of the U.S. Constitution, Sections 7 and 17 of the California Constitution, the Bane Act, and tort claims of negligence and intentional infliction of emotional distress.  (*Id*. at 3).

As relief, Plaintiff requests that the Court look at various prison records to confirm his account and seeks monetary compensation for his loss of taste and smell and the resulting emotional distress.  (*Id.* at 5).

### APPLICABLE LAW AND ANALYSIS

#### A. Eighth Amendment Conditions of Confinement

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits "cruel and unusual punishment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); U.S. Const. Amend. VIII.  Officials have an obligation to protect prisoners from the risk of infectious diseases.  *Helling*, 509 U.S. at 33 (citing cases critical of the failure to protect prisoners with contagious diseases from others).  Inmates who allege they are being subjected to unsafe conditions that violate the Eighth Amendment must assert facts that reflect a showing of two components: (1) an "objective component"—the objective seriousness of the challenged condition, and (2) a "subjective component"—the responsible official's subjective state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

There is no question that COVID-19 is a serious illness and courts have repeatedly found that a risk of exposure to COVID-19 satisfies the objective prong of the Eighth Amendment deliberate indifference analysis.  See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr.

4

17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, 2021 WL 2227636, at *9 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.'").

To satisfy the subjective prong, the inmate must show that the prison official was deliberately indifferent—"possessed a sufficiently culpable state of mind." *Wilson*, 501 U.S. 297-98. This requires the official to be aware of the substantial risk of harm and disregard that risk by failing to abate it using reasonable measures. *Farmer*, 511 U.S. at 837-45. This level requires more than negligence but less than actual malice. *Id.* at 835-36.

In a recent opinion by the Ninth Circuit Court of Appeals, the Court examined whether CDCR officials' decision to transfer 122 inmates from California Institution for Men, a prison with an outbreak of COVID-19, to San Quentin State Prison, a prison with no known cases of COVID-19, stated an Eighth Amendment claim. *Hampton v. California*, 2023 WL 6406760 (9th Cir. Oct. 3, 2023); *see also Polanco v. Diaz*, 76 F.4th 918, 925 (9th Cir. 2023) (examining virtually identical allegations in a case filed by family of a prison guard who died at San Quentin). The Court held that prison officials were deliberately indifferent to the serious risk posed by COVID-19 because, inter alia, they chose to transfer the inmates to San Quentin, a prison with poor ventilation and limited space for quarantining sick inmates; failed to test the transferee inmates prior to transfer; "packed" inmates onto buses to San Quentin "in numbers far exceeding" the COVID-capacity limits that CDCR had established for inmate safety; and failed to take post-transfer precautions, such as masking and quarantining. (*Id*. at *2, *9-10). Moreover, the officials had been advised repeatedly by their own medical staff and by Marin County public health officials of precautions needed to limit the risks of the transfer, but they disregarded those warnings. (*Id*. at *3, *9-10).

As in *Hampton*, Plaintiff here satisfies the objective prong of the deliberate indifference analysis. Plaintiff alleges there was a "severe outbreak" of COVID-19 at PVSP in December 2020, which given the transmissibility and lethality of the virus posed a serious risk to the health

1 | and safety of inmates.  (Doc. No. 21 at 3-4).

2 |       However, the SAC does not set forth facts showing that any Defendant was deliberately

3 | indifferent to that risk.  In fact, the declarations from inmates Billy Keck, Thomas Wanamaker,

4 | and Jonathan Kohut, attached to the SAC, describe several of the measures PVSP officials took to

5 | limit the spread of COVID-19.  (*See* Doc. No. 21 at 6-17).  All three inmates note that inmates

6 | throughout PVSP were being tested for COVID-19 and that those who tested positive were

7 | promptly quarantined in a single building of D-Yard (Building 3), while those who were not

8 | infected were housed in either Building 1 or Building 2.  (*Id*. at 7, 9, 13).  Moreover, inmates

9 | Wanamaker and Kohut note that after they tested positive, they were moved to Building 3 and

10 | stayed there until they had completed a 14-day quarantine.  (*Id*. at 9, 13).  During that time, prison

11 | staff took their temperature and blood oxygen level twice daily.  (*Id*.).  The COVID-19 policies in

12 | place at PVSP thus do not reflect deliberate indifference to the risks of the virus by prison

13 | leadership; rather, they tend to show that prison officials, including Defendants, took those risks

14 | seriously and took several measures to mitigate the risk.

15 |       Notably, as to inmate Keck, Plaintiff does not assert that Keck ever tested positive for

16 | COVID-19 or was infected, (*see id*. at 6-7), only that he was temporarily housed in the quarantine

17 | building where he was quarantined for 11 days.  To the extent that Keck was released from

18 | quarantine early, this appears to have been a *deviation* from the general policy that applied to

19 | other inmates, such as Wanamaker and Kohut, or may have reflected the fact that he never tested

20 | positive for COVID-19.  In any event, the SAC is devoid of facts alleging that any of the three

21 | named Defendants were aware of such a deviation, much less that they approved or endorsed it.

22 | Assuming Plaintiff contracted COVID-19 from Keck, the fact that he was placed in a cell with

23 | Keck appears to have resulted not from Defendants' policies, but from unknown prison staff

24 | departing from those reasonable policies.

25 |       The SAC also alleges that while prison officials were moving inmates from other yards to

26 | D-Yard, "they did not use or give proper [personal protective equipment] or cleaning supplys

27 | [sic]."  (Doc. No. 21 at 4).  To state a cognizable Eighth Amendment claim, Plaintiff must

28 | provide more than generalized allegations that Defendants have not done enough to control the

1    spread of COVID-19 such as by failing to provide sufficient cleaning supplies.  *See, e.g., Sanford*

2    *v. Eaton*, 2021 WL 1172911, at *6 (E.D. Cal. Mar. 29, 2021) (explaining that "Plaintiff must

3    provide more than generalized allegations that the warden, associate wardens and other

4    defendants have not done enough regarding overcrowding to control the spread" of COVID-19);

5    *Blackwell v. Covello*, 2021 WL 915670, at *3 (E.D. Cal. Mar. 9, 2021), (concluding that "in order

6    to state a cognizable Eighth Amendment claim against the warden plaintiff must provide more

7    than generalized allegations that the warden has not done enough to control the spread" of

8    COVID-19).

9           Further, the vague contention that prison officials did not provide cleaning supplies is

10   again belied by the inmate declarations attached to the SAC.  Inmates Wanamaker and Kohut,

11   who were both porters at PVSP, state that they had ready access to cleaning supplies which they

12   regularly used to clean common areas used by inmates.  (*See id*. at 9-10, 14-17).  Wanamaker

13   states that "the general consensus amongst inmates on D Facility is that cleaning chemicals are

14   available to porters or that they must be purchased from the canteen."  (*Id*. at 11).  Nor does the

15   SAC plausibly allege that any lack of access to cleaning supplies or personal protective

16   equipment ("PPE") caused Plaintiff's infection.  Plaintiff contends his infection was caused when

17   he was forced to share a cell with Inmate Keck which, as discussed above, was not the result of

18   any action or policy instituted by Defendants.  Thus, to the extent the SAC alleges Defendants

19   were deliberately indifferent based on the lack of cleaning supplies or PPE at PVSP, the claim

20   fails.

21          Because the SAC lacks any facts showing that these named Defendants were deliberately

22   indifferent to a serious risk to Plaintiff's health, or indeed any personal participation by

23   Defendants in the events that resulted in Plaintiff being infected with COVID-19, the SAC fails to

24   state an Eighth Amendment conditions of confinement claim as to any Defendant.

25          **B. Plaintiff's State Law Claims**

26          Plaintiff alleges two tort claims—negligence and intentional infliction of emotional

27   distress—against unspecified defendants, as well as violations of the California Constitution and

28   the Bane Act.  Compliance with California Government Claims Act ("GCA") is required before

7

Plaintiff may sue a state entity or its officers for tort violations and claims under the California Constitution or the Bane Act.  *See, e.g., Gonzalez v. Clough*, 2022 WL 3084266, at *7-8 (E.D. Cal. Aug. 3, 2022) (dismissing California Constitution claims for failure to comply with Government Claims Act), *report and recommendation adopted*, 2022 WL 5054134 (E.D. Cal. Oct. 04, 2022); *Abraham v. Howard*, 2016 WL 11755014, at *4 (C.D. Cal. Sept. 21, 2016) (same); *Garcia v. Blahnik*, 2015 WL 3888216, at *5 (S.D. Cal. June 22, 2015) ("The fact that Plaintiff's claims are alleged under the California Constitution as opposed to traditional tort claims does not excuse Plaintiff from complying with the Government Claims Act.") (citations omitted); *see also Inman v. Anderson*, 294 F. Supp. 3d 907, 925 (N.D. Cal. 2018) (Government Claims Act compliance required for claims under California Bane Civil Rights Act, Cal. Gov't Code 52.1). The GCA requires that a state law claim for damages against a public entity or its employees be presented to the California Department of General Services ("DGS"), formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2.  Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit.  *State v. Superior Court of Kings County (Bodde)*, 32 Cal.4th 1234, 1245 (Cal. 2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

Regarding Plaintiff's compliance with the Government Claims Act, the SAC states only that Plaintiff "filled Government Claims form and [it] was not resolved."  (Doc. No. 21 at 2). Plaintiff does not specify what claims he filed with the DGS, when, or what response he received. Because Plaintiff has not demonstrated compliance with the GCA, including obtaining a "right to sue" letter and compliance with the time limitations for filing a claim, as pled, the SAC fails to state a viable state law claim.

## FINDINGS AND RECOMMENDATION

Plaintiff had an opportunity to cure the deficiencies in his initial complaint.  (*See* Doc. No. 20).  In its prior screening order, the Court instructed Plaintiff on the applicable law and pleading requirements.  Despite affording Plaintiff an opportunity to correct the deficiencies, the SAC fails to adequately state any plausible § 1983 claim.  Thus, the undersigned finds it would be futile to

permit Plaintiff to file a further amended complaint and recommends the district court dismiss the SAC without further leave to amend. *McKinney v. Baca*, 250 F. App'x 781 (9th Cir. 2007) *citing Ferdik v. Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992) (noting discretion to deny leave to amend is particularly broad where court has afforded plaintiff one or more opportunities to amend his complaint); *see also Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (A district court can deny leave "where the amendment would be futile . . . or where the amended complaint would be subject to dismissal").

Accordingly, it is **RECOMMENDED**:

The SAC be dismissed under § 1915A for failure to state a claim and the action be dismissed.

<u>NOTICE TO PARTIES</u>

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these findings and recommendations, a party may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    October 13, 2023

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

9